Filed 9/22/14  Chiaramonte v. County of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CHARLES CHIARAMONTE, an Incompetent Person, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B243215 <br><br> (Los Angeles County Super. Ct. No. PC046611) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret L. Oldendorf and Stephen P. Pfahler, Judges.  Affirmed in part and reversed in part with directions.

Law Offices of Garrotto & Garrotto and Greg W. Garrotto for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendants and Respondents.

_____

**INTRODUCTION**

Plaintiff Charles Chiaramonte, through his guardian ad litem, appeals the judgment entered against him and in favor of defendants County of Los Angeles, Dr. Julian Wallace, Dr. A. Haniffa Cassim, and nurses Rosendo Florentin and Patricia Kim, after the trial court granted the defendants' motions for summary judgment. We reverse the judgment in favor of the County, affirm the judgment in favor of Wallace, Cassim, Florentin, and Kim, and remand with directions.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Incident*

On January 6, 2009 Chiaramonte was detained at the North County Correctional Facility, which the Los Angeles County Sheriff's Department supervises. At approximately 5:00 p.m. another inmate observed Chiaramonte "on the floor, face up," and not moving. A group of inmates picked up Chiaramonte and placed him back in his bunk, but Chiaramonte "began shaking violently [and] he fell out of the bunk [and] struck the side of his head against the concrete floor." Chiaramonte continued shaking, and "blood was oozing out of his mouth . . . ."

Nursing staff and sheriff's deputies responded. Although how long it took the jail staff to respond was disputed, at some point the nurses were able to bring Chiaramonte to the infirmary, where the paramedics arrived and took him to the hospital.

B.      *The Lawsuit*

In October 2009 Chiaramonte, through his guardian ad litem, filed this action against the County and various employees of the jail as Doe defendants. Chiaramonte asserted causes of action for (1) violation of his civil rights under 42 United States Code section 1983 (section 1983); (2) assault and battery; (3) intentional infliction of emotional

distress; and (4) violation of Government Code section 845.6.[1]  Chiaramonte alleged that defendants violated his constitutional rights by "failing to provide protection . . . from assaults and or other conditions that would in all probability result in injury to persons in a similar situation . . . or failing to provide medical services when there was knowledge or should been knowledge that immediate medical services were necessary."  Chiaramonte also alleged that "once it was known that [he] sustained serious head injuries, . . . [d]efendants with deliberate indifference failed to provide immediate medical attention even though it was known that said medical care and treatment would be necessary to prevent serious and permanent injuries."  Chiaramonte further alleged that he "had obvious signs of physical trauma" but that defendants "failed to summon or provide medical care to [Chiaramonte], who was in need of immediate medical care."  Finally, Chiaramonte alleged that defendants "had reason to know that the administration of medical and custodial care at [the] jail facility was such that as structured it could not respond to inmates in the position of [Chiaramonte], who had immediate medical needs caused by known serious and obvious medical conditions."

The trial court sustained demurrers to the second cause of action for assault and battery and the third cause of action for intentional infliction of emotional distress without leave to amend.  The court also denied the County's motion to strike the punitive damages allegations.  Neither Chiaramonte nor the County challenges these rulings.

C.      *The County's Motion for Summary Judgment*

In July 2010 the County moved for summary judgment, or in the alternative, summary adjudication.  The County argued that it was immune from liability for Chiaramonte's section 1983 claim under the Eleventh Amendment of the United States

---

**1**      Government Code section 845.6 provides that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody . . . except . . . if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. . . ."

3

Constitution because the county sheriff had final policymaking authority over the county jails and acted as a state officer in setting and implementing jail policies and procedures. The County also argued that it was not liable under Government Code section 845.6 because Chiaramonte could not establish that the jail employees failed to summon immediate medical care for Chiaramonte despite knowing or having reason to know that he needed such care. The County submitted the declarations of Custody Assistant Christian Young, Nurse Patricia Kim, and Deputy Luis Torres, all of whom were working the afternoon shift at North County Correctional Facility on January 6, 2009, as well as Dr. Julian Wallace, acting Chief Physician of the Medical Services Bureau.[2]

In opposition to the motion, Chiaramonte argued that the County, not the state, is responsible for providing medical care to the inmate population and that the sheriff does not act as a state official in providing medical care to inmates. Chiaramonte argued that, although the county sheriff might be immune from section 1983 claims for law enforcement activities, the sheriff was not immune from section 1983 claims based on the provision of medical care and prison safety, and that the sheriff "is a county official with regard to his responsibility to provide medical care to jail inmates." Chiaramonte argued that the delay in treatment violated his federal constitutional rights and his state rights under Government Code section 845.6.

In November 2010 the trial court granted the County's motion for summary adjudication on the first cause of action for violation of section 1983. The court ruled: "The County is not subject to suit for [Chiaramonte's] claims because the Los Angeles County Sheriff is protected by Eleventh Amendment immunity under the particular facts of the case. [¶] . . . [¶] . . . In this case, the Court finds that the functions being performed by the Sheriff that are the basis of [Chiaramonte's] claims (i.e., the alleged

---

[2]     Young and Torres stated that they had no recollection of Chiaramonte or the January 6, 2009 incident. Their declarations repeated statements contained in an Incident Report and an Inmate Injury Report. Chiaramonte did not object to the admission of these statements submitted in support of the County's motion for summary adjudication.

4

failure to provide protection and/or medical services to prisoners) are performed in the context of the Sheriff's role as an official of the State of California, and not the County of Los Angeles. [Citations.] As a result, the Sheriff is immune from liability under . . . [s]ection 1983—as is the named Defendant, the County of Los Angeles. [Citations.] [¶] The Court recognizes that some federal courts have concluded in other cases that the Sheriff is a 'local policymaker' when he performs certain activities relating to county jails and jail inmates. [Citations.] The Court is however obligated to base its decision on well-reasoned California precedent; and after much consideration and research, it concludes in this case that the California decisions mentioned above are controlling." The court denied the County's motion for summary adjudication on the fourth cause of action for violation of Government Code section 845.6, finding "that triable issues of material fact exists as to when Custody Assistant Christian Young knew (or had reason to know) that [Chiaramonte] was in need of medical care; and whether Young and the jail's nursing staff thereafter took reasonable action to summon such medical care."

### D. *The Second Amended Complaint*

In June 2011, after several rounds of and challenges to amended pleadings, Chiaramonte filed a second amended complaint asserting causes of action for: (1) civil rights violations against Wallace, Cassim, Florentin, and Kim; (2) assault and battery against Doe defendants; (3) intentional infliction of emotional distress against Doe defendants; (4) violation of Government Code section 845.6 against the County, Cassim, Florentin, and Kim; and (5) medical negligence against Cassim, Florentin, and Kim. Chiaramonte alleged that, at the time of his medical emergency, Cassim was the medical officer on duty and "the only medical doctor on duty . . . in the entire Los Angeles County Jail System," and had the responsibility for "providing medical care and treatment to up to 150 inmates in the Twin Towers Jail Facility Medical Clinic and [being] available for medical consultation and the provision of orders regarding [the] care and treatment to all other jail inmates in the Los Angeles County Jail System including but not limited to in excess of three thousand inmates in the North County Correctional

5

Facility." Chiaramonte alleged that "Cassim knew that he could not provide appropriate medical care to inmates who required medical treatment nor could he be available to provide medical orders and treatment to inmates who had a need for and required immediate medical treatment." With respect to Wallace, Chiaramonte alleged that, "[a]s Acting Chief Physician," he "was personally responsible for supervising the professional medical staff" at the jails, and "had responsibility for promulgating, amending, reviewing and approving the policies and procedures . . . relating to the provision of medical care to inmates in the Los Angeles County Jail System." Chiaramonte claimed that Wallace had created "a system of medical care" that failed to provide adequate emergency care at the jails, and allowed Cassim to serve as the medical officer of the day despite knowing that Cassim had a history of ignoring patients with medical needs in the jails.

Chiaramonte alleged in his fourth cause of action that nurses Kim and Florentin knew he needed immediate medical care but "failed to take reasonable action to summon such care" and "failed to timely respond to notification that [Chiaramonte] was in need of medical care . . . ." Chiaramonte also alleged that Cassim knew "he could not adequately respond to calls from non-doctor medical personnel in the case of inmates who required immediate medical attention at facilities other than where he was situated, and in all probability inmates in [Chiaramonte's] position . . . would sustain further injury through his known inability to act and respond." Finally, Chiaramonte alleged in his fifth cause of action for medical negligence that Kim and Florentin did not comply with the applicable standard of care "in diagnosing, treating and caring" for Chiaramonte, and that Cassim breached his standard of care by "failing to either be available or not being timely in performing his duties as 'Medical Officer of the Day' in providing medical orders and advice for health care staff at County Jail facilities where there would be no other medical physician staff."

E.     *The Individual Defendants' Motion for Summary Judgment*

In February 2012 the individual defendants (Wallace, Cassim, Kim, and Florentin) moved for summary judgment, or in the alternative for summary adjudication, on

6

Chiaramonte's first, fourth and fifth causes of action, arguing that they were entitled to qualified immunity as government employees and that there was no evidence of deliberate indifference to Chiaramonte's medical needs.[3] They also argued that Chiaramonte's claim for medical negligence was barred as untimely because Chiaramonte had not filed his malpractice action in court within six months of the County's notice of rejection of the claim.

In support of the motion, nurses Kim and Florentin submitted declarations detailing their version of the chronology of events. Kim first explained that upon receiving a call of "man down" indicating a medical emergency, "it is necessary to first obtain an emergency medical cart, obtain a gurney and gather an inmate trustee to assist with pushing the gurney, before proceeding to the site of the call. Also, a deputy escort is required because of the use of [the] inmate trustee. In some cases, where there [is] only one deputy in the clinic at the time of the call, that deputy will need to secure in a cell, all of the remaining inmates who are waiting to be seen in the clinic for medical care or treatment."

Kim stated that she received that "man down" call for Chiaramonte "at roughly 4:50 p.m.," and that Chiaramonte's dorm "is roughly a five minute walk from the clinic." When she arrived, she found Chiaramonte "on the floor on his left side, near his bunk, verbally non-responsive and combative," with "blood coming from his mouth and his face was flush." She "was unable to check his vital signs or oxygen status because of his combative behavior," but observed that he was moaning and "was non-responsive to painful stimuli." According to Kim, at 5:03 p.m. she told the deputies to call the paramedics, and at approximately 5:05 p.m. Chiaramonte "was transferred to a gurney, with the assistance of six deputies and he was brought to the clinic for further evaluation and care." Florentin then applied an oxygen mask and an intravenous line. Kim then attempted to contact Cassim, the medical officer on duty, but was unable to reach him.

---

[3] Wallace moved for summary adjudication only on the first cause of action, the only one in which he was named.

7

The paramedics arrived at 5:14 (according to the deputy clock) or 5:18 p.m. (according to the clinic clock) and transported Chiaramonte to the hospital at 5:29 p.m.

The individual defendants also submitted the declaration of Dr. Nickolay Teophilov, Chief Physician of the Sheriff's Department Medical Services Bureau, who stated he had reviewed the jail medical records. Dr. Teophilov stated that "[p]romptly upon assessing Mr. Chiaramonte in his housing module, the nurses recognized correctly that his medical condition required treatment that could not be provided in the infirmary clinic and instructed custody staff to summon paramedics for the patient's transport to the hospital for treatment. Mr. Chiaramonte was then transported to the infirmary clinic where further assessments were made. Mr. Chiaramonte was given oxygen and an [intravenous line] with normal saline was started. The treatment Mr. Chiaramonte received in the clinic was timely and appropriate." He stated his opinion that "the nursing staff, in the care and treatment they provided to Mr. Chiaramonte, conformed with the community standard of care," and that they properly called the paramedics to take Chiaramonte to the hospital.

In opposition to the motion, Chiaramonte argued that there were issues of material fact regarding the timing and extent of the medical care he received and whether the jail's system of medical care violated his civil rights. Chiaramonte argued that section 1200 of title 15 of the California Code of Regulations required a jail to have at least one physician available, Cassim was not available, and Wallace knew it. Chiaramonte also argued that the individual defendants were not entitled to qualified immunity because "the constitutional right to adequate medical care while incarcerated is clearly established," and that the malpractice claim was not untimely because the County had delayed in producing Chiaramonte's prison medical records.

On May 23, 2012 the court granted the individual defendants' motion for summary judgment. With respect to Chiaramonte's first cause of action for civil rights violations under section 1983, the court ruled that Chiaramonte had failed "to show that defendants are not entitled to qualified immunity or show that [his] civil rights were violated," and that Chiaramonte had failed "to show that there was a denial of medical

8

care that is manifested by defendants' deliberate indifference to [his] needs." The court noted that Kim and Florentin summoned the paramedics, and that, although Cassim did not respond to Kim's telephone calls, there was no evidence that he "deliberately absented himself from the nurses to prevent any calls or deliberately did not take calls from the nurses." In addition, there was no evidence that Wallace "was involved in the specifics of this case." The court also noted that Chiaramonte had cited to section 1200 of title 15 of the California Code of Regulations, but had "not established what is meant by this statute, whether it means that the physician must be present for 24 hours a day and whether the physician must be physically present."

With respect to the fifth cause of action for medical malpractice, the court stated that Chiaramonte had not submitted "an opposing physician declaration that disputes the conclusion of Dr. Teophilov that the care and treatment provided by the nursing staff to [Chiaramonte] conformed to the standard of care." The court also found that Chiaramonte had not submitted sufficient evidence of delayed discovery.[4]

Chiaramonte subsequently dismissed his remaining cause of action against the County for violation of Government Code section 845.6. The trial court entered judgment on July 3, 2012. Chiaramonte filed a timely notice of appeal.

## DISCUSSION

Chiaramonte argues that the trial court made three errors. First, the court erroneously granted summary adjudication in favor of the County on his section 1983 claim because the sheriff, in maintaining the jails and providing medical services to inmates, acts on behalf of the County, not the state, and therefore is not entitled to

---

[4] Chiaramonte conceded that the individual defendants were entitled to summary adjudication on his fourth cause of action for violation of Government Code section 845.6. The second cause of action for assault and battery and the third cause of action for intentional infliction of emotion distress were against Doe defendants only, and were not the subject of the summary judgment motion.

9

Eleventh Amendment immunity.  Second, the trial court erroneously granted summary adjudication in favor of the individual defendants on his section 1983 claim because these defendants are not entitled to qualified immunity.  Finally, the trial court erroneously granted summary adjudication in favor of Cassim, Florentin, and Kim because, contrary to the trial court's ruling, the six-month deadline did not bar the claim and there were triable issues of material fact regarding whether Cassim, Florentin, and Kim breached the applicable standards of care.

A.  *Standard of Review*

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.  [Citation.]' [Citation.]  A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  [Citation.]" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813; see *Rhea v. General Atomics* (2014) 227 Cal.App.4th 1560, 1566, petn. for review pending, petn. filed Sep. 2, 2014.)  "'A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action.  [Citations.]  The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense.  [Citations.]  Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted.  [Citation.]' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 817.)  "Appellate courts (1) take the facts from the record that was before the superior court when it ruled on the motion; (2) consider all the evidence set forth in the moving and opposing papers, unless the superior court sustained objections to that evidence; and (3) resolve doubts concerning the evidence in favor of

10

the party opposing the motion.  [Citation.]"  (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368, 374.)

  B.  *The County Is Not Entitled to Summary Adjudication on Chiaramonte's Section 1983 Claim on the Ground of Eleventh Amendment Immunity*

  "Because the Fourteenth Amendment to the United States Constitution sets standards of conduct for state and local governments, but does not provide for redress, individuals whose federal rights are violated by a state or local official may seek the protection of this statute, title 42 United States Code section 1983."[5]  (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 584, fn. 4.)  Section 1983 "of the federal Civil Rights Act, provides remedies for violations of federal rights committed by persons acting under color of state law."  (*Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1219.)  As the California Supreme Court has explained, "'[l]ocal governing bodies . . . can be sued directly under [section] 1983 for monetary . . . relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'  [Citation.]  Section 1983 was enacted to provide compensation 'to those deprived of their federal rights by state actors,' a category that includes cities and other local governments."  (*Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 406.)

  States and state officers acting in their official capacity are absolutely immune under the Eleventh Amendment from tort liability under section 1983.  (See *Buckhannon Home v. West Va. Dept.* (2001) 532 U.S. 598, 609, fn. 10 [121 S.Ct. 1835, 149 L.Ed.2d

---

[5] Section 1983 provides in part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

11

855]; *Flint v. Dennison* (9th Cir. 2007) 488 F.3d 816, 824-825; *Bougere v. County of Los Angeles* (2006) 141 Cal.App.4th 237, 241-242.) "'[S]tates and state officers sued in their official capacity are not considered "persons" for purposes of section 1983 and are immune from liability under that statute by virtue of the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. [Citation.]' [Citations.]" (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 892.) Eleventh Amendment immunity, however, does not apply to local government and officials. (See *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829, italics omitted ["cities, counties and local officers sued in their official capacity" are considered "'persons'" under section 1983 and may be sued directly "for constitutional violations carried out under their own regulations, policies, customs, or usages by persons having 'final policymaking authority'"].) The determination of whether the particular government official is acting as a policymaker for the state or for the county is a matter of state law. (*McMillian v. Monroe County* (1997) 520 U.S. 781, 786 [117 S.Ct. 1734, 138 L.Ed.2d 1]; see *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 352-353; *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 233-234.)

A number of California cases have addressed the issue whether a local government official is acting on behalf of the state or a county for purposes of Eleventh Amendment immunity. In *Pitts v. County of Kern, supra,* 17 Cal.4th 340 a group of plaintiffs whose convictions for sex offenses against children had been reversed for prosecutorial misconduct, and whose alleged victims recanted, sued the district attorney and other county officials involved in the prosecution. (*Id.* at pp. 345-346.) The plaintiffs claimed "civil rights violations based on alleged misconduct during the criminal prosecution." (*Id.* at p. 346.) The California Supreme Court held that "a district attorney is a state official when preparing to prosecute and when prosecuting criminal violations of state law," as well as when he or she is "training and developing policy in these areas." (*Id.* at pp. 360, 362.) The Supreme Court noted, however, that its "conclusion as to which entity the district attorney represents might differ were plaintiffs challenging a district

12

attorney's alleged action or inaction related to hiring or firing an employee, workplace safety conditions, procuring office equipment, or some other administrative function arguably unrelated to the prosecution of state criminal law violations. Those considerations are not presented here." (*Id.* at p. 363.)

In *County of Los Angeles v. Superior Court* (1998) 68 Cal.App.4th 1166 (*Peters*) the plaintiff alleged that after she "posted bail, the Sheriff of Los Angeles County and his deputies nevertheless detained [her] in the Los Angeles County jail for an additional 10 days, in reliance on a warrant which they reasonably should have known did not relate to her." (*Id.* at p. 1168.) The plaintiff sued the County of Los Angeles under section 1983, alleging that the sheriff had an "official policy of detaining, arresting, imprisoning, searching and harassing persons based on warrants for the arrest of other people; of failing to properly investigate claims of persons that they are not the person named in the warrant; and of failing to properly train, supervise, control, and discipline officers to prevent violations of the rights of persons wrongly arrested." (*Peters*, *supra*, at p. 1169.) The court, applying *McMillian* and *Pitts*, held that "in establishing policies for the release of persons from a county jail, a sheriff acts as a state official, not a policymaker for the county." (*Peters*, *supra*, at p. 1174.) The court noted that article V, section 13 of the California Constitution, and Government Code section 12560, gave the Attorney General supervisory authority over the county sheriffs, and Government Code section 26605 required the sheriff to "'take charge of and . . . keep the county jail and the prisoners in it.'" (*Peters*, *supra*, at pp. 1174-1175.) The court stated that, in contrast, Government Code section 25303 prohibited the county board of supervisors from "obstruct[ing] the investigative function of the sheriff of the county . . . ." (*Peters*, *supra*, at p. 1175, italics omitted.) The court concluded that "the sheriff operates the jail pursuant to the sheriff's constitutional and statutory law enforcement powers, and not as a policymaker for the board of supervisors, which has no direct control over the sheriff in this regard." (*Id.* at p. 1177.) The court emphasized that "[t]he function involved in this case is determining whether to release a person who may be subject to arrest on an outstanding warrant. This is a law enforcement function." (*Ibid.*)

In *Venegas v. County of Los Angeles*, *supra*, 32 Cal.4th 820, a husband and wife filed an action under section 1983 against Los Angeles County and its sheriff's department for unreasonable search and seizure during a criminal investigation. The county and the sheriff's department claimed "California sheriffs conducting criminal investigations are acting on behalf of the state when performing law enforcement activities," and that therefore, "as a state agent, the sheriff enjoys the state's immunity from prosecution for the asserted violations of section 1983 . . . ." (*Venegas*, *supra*, at p. 828.) The California Supreme Court "conclude[d] that, following the analysis prescribed in *McMillian*, *Pitts* and *Peters*, California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity." (*Id.* at p. 839.)

And in *Bougere v. County of Los Angeles*, *supra*, 141 Cal.App.4th 237 the plaintiff was an inmate in the county jail who claimed that the denial by jail employees of his repeated requests for a transfer to another facility after he had received threats against his life allowed other inmates to inflict injuries on him. (*Id.* at p. 240.) Applying *Pitts*, *Peters*, and *Venegas*, the court held that "[t]he sheriff's duties to preserve the peace (Gov. Code, § 26600) and to 'prevent and suppress any affrays, breaches of the peace, riots, and insurrections' (Gov. Code, § 26602) are law enforcement functions and do not lose this status simply because they are carried out within the confines of a jail, which the sheriff is charged with operating (Gov. Code, § 26605). Inmates at the county jail typically consist of those persons who have been arrested for committing state crimes and are awaiting trial, persons who have already been sentenced, and those detained as witnesses or under civil process or contempt orders. We cannot find that a sheriff's policies relating to the safekeeping of such persons is merely an 'administrative function arguably unrelated to the prosecution of state criminal law violations.'" (*Bougere*, *supra*, at p. 247, quoting *Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 363.) The court concluded "that in setting and implementing policies and procedures concerning the assignment of inmates in the county jail, the sheriff acts as a state officer performing state law enforcement duties, and not as a policymaker on behalf of the county," and that therefore

14

the County was entitled to immunity under the Eleventh Amendment. (*Bougere*, *supra*, at pp. 247-248.)

Thus, California case law has made it clear that county sheriffs and their deputies act on behalf of the state when performing law enforcement activities, whether those activities are performed out in the field or "within the confines of a jail." (*Bougere v. County of Los Angeles*, *supra*, 141 Cal.App.4th at p. 247.) Similarly, sheriffs and their deputies act on behalf of the state when performing law enforcement activities (*Venegas v. County of Los Angeles*, *supra*, 32 Cal.4th at p. 828), such as searching houses and cars and seizing evidence "when conducting a criminal investigation" (*id.* at p. 826). In the context of operating the jails, California sheriffs are acting on behalf of the state when implementing policies regarding where and how to house inmates and when to release them. (See *Bougere*, *supra*, at pp. 247-248; *Peters*, *supra*, 68 Cal.App.4th at p. 1174.) And, although not directly relevant to the issue in this case, prosecutors act on behalf of the state when they prosecute crimes and train other prosecutors to do so. (*Pitts v. County of Kern*, *supra*, 17 Cal.4th at pp. 345, 362, 366.)

No California case, however, has held that the sheriff acts on behalf of the state in the provision of medical care to inmates of the county jail. Unlike assigning inmates to cells or buildings in the jail, segregating them for security reasons, or determining whether to release them, providing medical care to inmates does not necessarily involve a law enforcement function. (See *Venegas v. County of Los Angeles*, *supra*, 32 Cal.4th at p. 834; *Bougere v. County of Los Angeles*, *supra*, 141 Cal.App.4th at p. 247; *Peters*, *supra*, 68 Cal.App.4th at p. 1175.) No case has held that everything the sheriff does in operating the jails qualifies as conduct on behalf of the state. To the contrary, the determination of whether a particular government official acts for the state or the county "'does not require an "all-or-nothing" categorization applying to every type of conduct in which the official may engage. Rather, the issue is whether the official is a local policymaker with regard to the particular action alleged to have deprived the plaintiff of civil rights.' [Citation.]" (*Bougere*, *supra*, at p. 242; accord, *Peters*, *supra*, at p. 1172; see *Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 353, italics added [under *McMillian*,

15

we resolve the issue of immunity by deciding "the question of which entity a government official represents *when performing a certain function*"].)[6]

Chiaramonte claims that the Los Angeles County Sheriff's Department performed three particular functions or actions, pursuant to policies, that violated section 1983. Chiaramonte alleges that the sheriff's department (1) failed to respond promptly to a medical emergency, (2) did not have a doctor or emergency medical care professional at or near the jail in which he was incarcerated, and (3) employed a (far away) "Medical Officer of the Day" who had a history of abandoning and ignoring inmates who needed medical attention. We agree with the County that the first claim, regarding the timeliness of the response to Chiaramonte's medical condition, involves law enforcement activity similar to *Bougere* and *Peters*, because the County submitted evidence that the response time is related to jail, inmate, and staff security. For example, Young, a custody assistant on duty during Chiaramonte's medical emergency, stated that he needs to "call for deputy back-up, before entering the dorm . . . for safety and security reasons," and that he must wait until "sufficient custody personnel arrive[s]" before it is safe to enter the dorm. Kim stated that the jail must provide her with a security escort and also secure the infirmary before she can respond to a "man down" emergency in the dormitory. Deputy Torres, who was working the evening shift, stated that if it is necessary to enter a cell containing other inmates to reach a "man down," he must wait for back-up deputies to arrive before entering the cell "for safety and security reasons." Thus, policies like the one in this case that affect the time it takes to respond to a medical emergency unquestionably relate to law enforcement activities of the sheriff, and under *Venegas*, *Bougere*, and *Peters* government officials implementing and executing those policies are entitled to immunity.

In contrast, Chiaramonte's second claim, the decision whether and when to have a doctor on the jail premises, does not involve the kind of law enforcement activities that

---

[6] Thus, although the County "strenuously maintain[s] the Sheriff acts on behalf of the State in all aspect[s] of running the jails and the keeping of the prisoners therein," California law is contrary to the County's position.

16

the *Venegas*, *Bougere*, and *Peters* courts found were actions taken on behalf of the state. In the "particular action" at issue in this case, the sheriff's department was not investigating criminal activity (*Venegas*), assisting in the prosecution of crimes (*Pitts*), maintaining security in the jail (*Bougere*), or ensuring the safety of the public (*Peters*). The sheriff's department was performing the administrative function of scheduling doctors. The only evidence the County submitted in its motion for summary judgment of why there was no doctor at the jail when Chiaramonte required medical attention was the statement by Dr. Julian Wallace, the Chief Physician of the Sheriff's Department's Medical Services Bureau, that the jail where Chiaramonte was incarcerated had doctors at the facility clinic Monday through Friday from 6:30 a.m. to 2:30 p.m. but not after that. Such a scheduling decision seems reasonable, but it is a scheduling decision, not a law enforcement one. Indeed, the scheduling of doctor shifts at the jail is closer to the employment decision or "administrative function arguably unrelated to the prosecution of state criminal law violations" that the Supreme Court in *Pitts* suggested was not an action on behalf of the state. (*Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 363.)[7]

The County asserts that "[t]here is no authority whatsoever for the County Board of Supervisors to dictate the policies within the jail regarding medical care, including staffing of medical personnel, for the prisoners or to otherwise control the operation of the jail in this regard." Penal Code section 4015, subdivision (a), however, provides: "The board of supervisors shall provide the sheriff with necessary food, clothing, and bedding, for those prisoners, which shall be of a quality and quantity at least equal to the minimum standards and requirements prescribed by the Board of Corrections for the feeding, clothing, and care of prisoners in all county, city and other local jails and

---

[7]    Chiaramonte's third claim, employment of a doctor who had a history of ignoring the medical needs of inmates, also does not appear to implicate state law enforcement activities. Chiaramonte, however, did not submit admissible evidence in support of this claim in opposition to the motion for summary judgment. The trial court sustained the County's evidentiary objections to the evidence relating to this claim, and Chiaramonte has not challenged those rulings on appeal.

17

detention facilities." Chiaramonte also cites to Government Code sections 29602 ["[t]he expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail . . . are county charges"] and 25351 [board of supervisors has the power to construct, expand, and repair jails]. As the court recognized in *Board of Supervisors v. Superior Court* (1995) 33 Cal.App.4th 1724, Penal Code section 4015, subdivision (a), and Government Code section 29602, as well as "other statutes[,] establish the duty of the board of supervisors to provide the sheriff with necessities for prisoners." (*Id.* at p. 1738.)

Although this is a close case, the facts and circumstances here do not justify an extension of Eleventh Amendment immunity to all of Chiaramonte's claims. Because on this record at least one of Chiaramonte's claims is not subject to Eleventh Amendment immunity, the County was not entitled to summary adjudication of his cause of action under section 1983. (See Code Civ. Proc., § 437c, subd. (f)(1) ["[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action"]; *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1312 [although moving party is not entitled to summary adjudication on less than the entire cause of action, such a party is "not without procedural devices, including, for example, a motion in limine"]; *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 975 ["there can be no summary adjudication of less than an entire cause of action"].)

C.    *The Individual Defendants Are Entitled to Summary Judgment on Chiaramonte's Section 1983 Claim Based on Qualified Immunity*

In *Saucier v. Katz* (2001) 533 U.S. 194 [121 S.Ct. 2151, 150 L.Ed.2d 272] the United States Supreme Court "established a two-step procedure for determining whether a defendant's conduct was entitled to qualified immunity. First, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' [Citation.] 'If no constitutional right would have been violated were the allegations established,' then the qualified immunity inquiry ends. [Citation.] However, 'if a violation could be made out on a favorable view of the parties'

18

submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad, general proposition . . . .' [Citation.]" (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 711, fn. omitted; see *Tolan v. Cotton* (2014) ___ U.S. ___, ___ [134 S.Ct. 1861, 1865-1866, 188 L.Ed.2d 895].)[8] "The issue of whether qualified immunity exists is ultimately one of law for the trial court. [Citation.] Disputes of historical fact relevant to the issue, however, must be decided by a jury." (*Wood v. Emmerson* (2007) 155 Cal.App.4th 1506, 1515.)

Considering "the specific context" of this case (*Saucier v. Katz*, *supra*, 533 U.S. at p. 201), the evidence submitted in connection with the motion for summary judgment does not show that Wallace, Cassim, Florentin, or Kim violated Chiaramonte's constitutional rights. Chiaramonte's claim is that the medical care he received violated the Eighth and Fourteenth Amendments because the individual defendants did not respond in time and, in Wallace's case, knew that they could not respond in time.

As Chiaramonte recognizes, in order for this conduct to constitute a constitutional violation, it must amount to deliberate indifference to his serious medical needs. "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.' [Citation.] This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.' [Citation.]" (*Colwell v. Bannister* (9th Cir. 2014) ___ F.3d ___, ___ [2014 WL3953769 at p. 3]; see *Estelle v. Gamble* (1976) 429 U.S. 97, 104-105, fns. omitted [97

---

**8** In *Pearson v. Callahan* (2009) 555 U.S. 223 [129 S.Ct. 808, 172 L.Ed.2d 565], the United States Supreme Court changed the order of the two-step procedure of *Saucier* from mandatory to discretionary, so that individual trial courts could "determine which prong of the inquiry should be tackled first." (*Mendoza v. City of West Covina*, *supra*, 206 Cal.App.4th at p. 711, fn. 9; see *Tolan v. Cotton*, *supra*, ___ U.S. at p. ___ [134 S.Ct. at p. 1866] ["[c]ourts have discretion to decide the order in which to engage these two prongs"].)

19

S.Ct. 285, 50 L.Ed.2d 251] ["deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' [citation] proscribed by the Eighth Amendment," which includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"]; *Peralta v. Dillard* (9th Cir. 2014) 744 F.3d 1076, 1082 ["[a] prison official is deliberately indifferent to [a serious medical] need if he 'knows of and disregards an excessive risk to inmate health'"].)  "[S]ubjective recklessness as used in the criminal law is . . . the test for 'deliberate indifference' under the Eighth Amendment."  (*Farmer v. Brennan* (1994) 511 U.S. 825, 839-840.)

Nothing in the evidence suggests that any of the individual defendants acted with deliberate indifference to Chiaramonte's medical needs.  Nurses Kim and Florentin responded responsibly and with alacrity to the challenging medical and security issues that suddenly arose on January 6, 2009.  Although there may have been some discrepancies regarding the precise minute each stage of the response occurred, the undisputed evidence is that the nurses were able to reach Chiaramonte, transport him to the infirmary, begin providing treatment, call the paramedics, and get him to the hospital, all within a relatively short amount of time.  Even if the timing of their actions were not perfect, no reasonable person could conclude from the evidence that they acted with intentional or reckless indifference to Chiaramonte's medical needs.

As for doctors Wallace and Cassim, there is also no admissible evidence that they acted with deliberate indifference.  Although there was evidence that Cassim was absent and, at least for some period of time, unreachable, that evidence did not support a conclusion that Cassim's absence or unavailability was deliberate indifference.  Chiaramonte's citation to section 1200 of title 15 of the California Code of Regulations, even if it says what he contends it says, is a reference to a "regulatory" right, not a constitutional right.  (See *Ove v. Gwinn* (9th Cir. 2001) 264 F.3d 817, 824 ["'[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983

20

offers no redress'"]; *Anderson v. City* (E.D.Cal. 2014) 2014 WL 2442592 at p. 3 ["[t]here is no independent claim under [section] 1983 for violation of prison regulations"]; *Hutchison v. Marshall* (C.D.Cal. 2011) 2011 WL 862118 at p. 10 ["[s]ection 1983 provides a cause of action only for violation of the United States Constitution and federal laws and statutes"].)[9]

Therefore, because the evidence showed no violation of Chiaramonte's constitutional rights by Wallace, Cassim, Kim, or Florentin, they are entitled to qualified immunity from Chiaramonte's section 1983 claim against them. (See *Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 144 ["qualified immunity applies only to individuals . . . and not to municipalities"].)

D.    *The Individual Defendants Are Entitled to Summary Judgment on Chiaramonte's Medical Malpractice Claim*

      1.    Chiaramonte's Malpractice Claim Is Barred by Government Code Section 945.6

Government Code section 945.6, subdivision (a), provides, in pertinent part, that "any suit brought against a public entity on a cause of action for which a claim is required to be presented . . . must be  commenced:  [¶] (1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail." Subject to certain exceptions not applicable here, a person with a claim against a public entity must "initiate a lawsuit against the public entity or public employee not later than six months after the date notice of the claim's rejection was personally delivered to the person or deposited in the mail," and [f]ailure to comply with this six-month time limitation mandates dismissal of the lawsuit." (*Apollo*

---

[9]    Chiaramonte relies on *Jensen v. Lane County* (9th Cir. 2000) 222 F.3d 570, which held that a physician who treated an inmate at a county health facility was not entitled to qualified immunity. The doctor in *Jensen*, however, was "a contract psychiatrist affiliated with a private group," not a government employee. (*Id.* at p. 573.) All of the individual defendants in this case were government employees.

21

*v. Gyaami* (2008) 167 Cal.App.4th 1468, 1486, fn. 14.) Government Code section 945.6 "is a true statute of limitations defining the time in which, after a claim presented to the government has been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209.)

The trial court found that Chiaramonte's medical malpractice claim against the individual defendants was untimely and that Chiaramonte had not met his burden of proving delayed discovery. Chiaramonte argues that the delay in filing was justified and delayed accrual of his claim because the County "intentionally postponed production of any information concerning [Chiaramonte's] medical care and the identities of those employees" of the County who treated him. Chiaramonte asserts that he filed his amended claim, which included a malpractice claim, within six months of the County's disclosure of the information.

The chronology does not support Chiaramonte's argument. Chiaramonte filed his government claim on May 6, 2009. By the time the County rejected his claim on October 14, 2009, Chiaramonte had already filed his complaint in this action on October 8, 2009. Although Chiaramonte's tort claim submitted to the County included a claim for medical malpractice, his original complaint filed in this action did not. Under Government Code section 945.6, Chiaramonte had six months from the denial of his claim, or until April 22, 2010, to file a cause of action for medical practice. Chiaramonte did not attempt to bring a medical malpractice claim until October 29, 2010, when he filed a motion for leave to file a first amended complaint (which included a medical malpractice cause of action), long after the six-month period had expired.[10] Under Government Code section 950.2 a cause of action against a public employee acting within the course and scope of employment is barred if the cause of action against the public entity is barred. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767; see *C.A. Magistretti Co. v. Merced*

---

[10] The trial court granted the motion on January 31, 2011.

22

*Irrigation Dist.* (1972) 27 Cal.App.3d 270, 274-275 ["'[s]ection 950.2 applies to all public employees'" and "'makes it clear that when such an employee is sued for an act or omission in the scope of employment, said action is barred by the failure to present a claim to the employing public entity,'" and "'[t]his is true even where the public entity itself is immune from liability'"].) Therefore, Chiaramonte's medical malpractice claim against the individual defendants was untimely because his medical malpractice claim against the County was untimely.[11]

Nor was there any basis for delaying accrual of the medical malpractice cause of action. "The government claims statutes do not contain a unique definition of accrual. Rather, accrual of the cause of action for purposes of the claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. [Citations.]" (*K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1238.) A medical malpractice claim "accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action," in which case "the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 803.) Chiaramonte not only suspected in May 2009 he had an injury caused by the medical negligence of the County and its employees, he actually and timely submitted a tort claim to the County claiming medical malpractice.

---

[11]    Chiaramonte did not argue in the trial court, and does not argue on appeal, that the medical malpractice cause of action against Cassim, Kim, and Florentin related back to the original complaint. (Cf. *Roe v. County of Lake* (N.D.Cal. 2000) 107 F.Supp.2d 1146, 1154 [first amended complaint filed more than six months after notice of rejection of government tort claim was not untimely under Government Code section 945.6 because "the original complaint details almost verbatim the same factual allegations that are found in the amended complaint"].)

23

Therefore, his medical malpractice claim accrued no later than May 2009, and Government Code section 945.6 bars Chiaramonte's claim.

        2.       Chiaramonte's Malpractice Claim Is Barred Because He Did Not Create a Triable Issue of Fact on the Standard of Care

Under Government Code section 845.6, "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Nurses Kim and Florentine admittedly knew that Chiaramonte needed immediate medical care. They submitted the expert declaration of Dr. Teophilov, who gave his opinion, after reviewing the medical records, that the nurses followed the proper procedures, summoned the paramedics, and "initiated all other appropriate life saving interventions . . . ." Dr. Teophilov opined that "the nursing staff, in the care and treatment they provided to Mr. Chiaramonte, conformed with the community standard of care." Dr. Teophilov stated that "[t]here was no further treatment the nurses could have provided to Mr. Chiaramonte in the setting of an outpatient clinic," and that the nurses "appropriately called the paramedics to transfer the patient to a hospital for further evaluation and treatment." This evidence satisfied the individual defendants' initial burden on summary judgment. (See *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468 [medical expert's declaration that the defendants "acted reasonably and appropriately and that [their] actions were within the community's standard of care" was sufficient to shift burden on summary judgment to the plaintiff]; *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 934-935 [defendant in medical malpractice action met his initial "statutory burden of proof" on summary judgment by submitted declaration of medical expert on standard of care].) Chiaramonte in his opening brief does not argue otherwise.[12]

---

[12]     Chiaramonte argues in his reply brief that the individual defendants did not meet their initial burden on summary adjudication because Dr. Teophilov's declaration lacked

24

Chiaramonte argues that "there are questions of material fact that precluded summary judgment on the cause of action for medical negligence." In opposition to the motion, however, Chiaramonte did not submit a declaration from an expert that could create a triable issue of fact. Therefore, the individual defendants were entitled to judgment on Chiaramonte's medical malpractice claim as a matter of law. (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 [""""[w]hen a defendant [in a medical malpractice case] moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence""""]; *Selden v. Dinner* (1993) 17 Cal.App.4th 166, 173 ["a medical standard of care can only be established by way of expert medical testimony"]; *Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984 [because plaintiffs "failed to submit the declaration of an expert in opposition to the motion for summary judgment," there was no triable issue of fact "regarding defendants' compliance with the relevant medical standard of care"].)

---

foundation. Chiaramonte points to Dr. Teophilov's deposition testimony that his opinions regarding Chiaramonte's medical condition and diagnosis "would be all speculation" because he had not seen all of Chiaramonte's medical records. By raising this argument for the first time on reply, however, Chiaramonte has forfeited it. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2.) On the merits, Dr. Teophilov did provide foundation for his opinions, including identifying the medical records and testimony he reviewed, and he explained the bases for his opinions. Because his opinion concerned the actions and timing of the nurses in responding to the "man down" call, he did not need to know or have an opinion about the specifics of Chiaramonte's medical condition. Indeed, he was evaluating the conduct of the nurses in responding to the emergency without knowing what Chiaramonte's precise medical condition was, and in getting Chiaramonte to a facility where he could receive appropriate diagnostic treatment.

## DISPOSITION

The judgment is reversed as to the County.  The trial court is directed to vacate its November 2010 order granting the County's motion for summary adjudication on Chiaramonte's first cause of action for violation of his civil rights under section 1983 and to enter a different order denying the motion.  In all other respects, the judgment is affirmed.  The parties are to bear their own costs on appeal.

SEGAL, J.[*]

We concur:

WOODS, Acting P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.